IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAE TANAKA,                          :
                                     :
        Plaintiff,                   :        Case No. 4: CV-05-1954
                                     :
        v.                           :
                                     :
SARA MCCOY,                          :        (Judge McClure)
                                     :
        Defendant.                   :

**O R D E R**

October 14, 2005

<u>**BACKGROUND:**</u>

On September 27, 2005, plaintiff Kae Tanaka, filed a three-count complaint

against defendant Sara McCoy.  Contemporaneously, plaintiff filed a motion for a

temporary restraining order ("TRO") and a preliminary injunction.  On September

29, 2005, the court issued a TRO after holding an <u>ex</u> <u>parte</u> TRO hearing, and

scheduled a hearing on plaintiff's request for a preliminary injunction for October

11, 2005.  At the preliminary injunction hearing the court ruled from the bench that

plaintiff's motion for a preliminary injunction would be denied because plaintiff had

failed to demonstrate irreparable harm.  At both hearings plaintiff and witness John

Scott testified by phone from Japan.  This order follows and provides an

elaboration of our reasoning.

## DISCUSSION:

### I.  LEGAL STANDARD

A party seeking preliminary injunctive relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary injunctive relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." KOS Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).   "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" KOS Pharmaceuticals, Inc., 369 F.3d at 708 (quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994); Instant Air Freight Co. V. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1988)).

The essential factors for granting preliminary injunctive relief are irreparable harm and likelihood of success on the merits; if one of those factors is absent the moving party is not entitled to a preliminary injunction.  Int'l Union v. Textron Lycoming Reciprocating Engine Div., 919 F.Supp. 783, 789 (M.D. Pa. 1996); see

2

also <u>Larami Ltd. v. Ohio Art Co.</u>, 270 F. Supp. 2d 555, 562 (D.N.J. 2003) (citing

<u>Reebok Int'l v. J. Baker, Inc.</u>, 32 F.3d 1552, 1555-56 (Fed. Cir. 1994)) (noting that

in patent infringement cases the Federal Circuit does not require district courts to

analyze all four factors when denying a preliminary injunction because the movant

has failed to demonstrate either irreparable harm or a substantial likelihood of

success on the merits).

## II.  RELEVANT FACTS

This dispute is about the ownership rights to three websites:

http://www.bluefind.com ("bluefind.com"), http://www.sevenseek.com

("sevenseek.com"), http://www.v7n.com ("v7n.com"), and the revenue those

websites generate.  Sevenseek.com and bluefind.com are directory websites that

generate revenue from their listings.  V7n.com is a website that contains a

webmaster internet forum that generates revenue from its advertising.  Plaintiff

asserts that she is the owner of the websites.  Defendant currently possesses total

control over the content of these websites, and has directed the revenue streams

from the websites to accounts which she controls.  How defendant gained control

over the websites is a complicated matter.

Although the dispute is formally between Tanaka and McCoy, we agree with

defendant that John Scott, who resides with Tanaka in Japan, and who testified that

his company (Scott Media Inc.), maintains and manages the websites, may be the real plaintiff in interest in this matter.  If Scott is not the real plaintiff in interest, it is apparent to the court that he certainly has a better understanding of what has occurred with the websites than Tanaka, the websites' alleged owner.[1]

Scott is a 95% shareholder of Scott Media Inc., and defendant Sara McCoy is a 5% shareholder.  Scott Media Inc. is described on the V7n.com website under its "About" tab as a company, founded by Scott, that works to serve dot com business owners with brand building, web development, and internet marketing.[2]  Allegedly, Tanaka hired Scott Media Inc. to run and maintain the websites at issue in this case.

The preliminary injunction hearing revealed that Scott is at the center of this controversy.  McCoy met Scott on an internet forum that he administered.  At that time she lived in Pennsylvania and Scott lived in Las Vegas.  The two agreed to move to Seattle and began working together on various internet projects involving website development and advertising.  McCoy and Scott were intimately involved at one point, and McCoy contends that Scott is the father of her recently born son.

---

[1]Or at least because of the Japanese-English language barrier, Scott is more capable of testifying via phone than Tanaka.

[2]See The V7 Network Web Development Community, Scott Media, Inc., http://www.v7.n.com/about-us.php (last visited Oct. 13, 2005).

4

When McCoy became pregnant at the end of 2004, she returned to be with her family in Pennsylvania, and after briefly returning to Seattle, returned to Pennsylvania for the final time in May of 2005.

At some point in the summer of 2005, Scott left the United States for Japan. Apparently he was denied entry in his first attempt to enter Japan. Scott then decided to illegally enter Japan via boat through Korea. Scott was caught and detained by Japanese authorities for twenty days. Scott is now romantically involved with Tanaka, and is the father of plaintiff's three-year old son.

In 2003, Scott had been involved in forming the Delaware corporation V7 Inc. with Tanaka, and two other men. Scott contends that Tanaka is now the sole shareholder of that company, and is the owner of the websites. In May 2004, McCoy began a sole proprietorship registered in Washington under the registered trade name V7 Inc. Scott contends that the Washington State sole proprietorship V7 Inc. has never done anything, and was formed so McCoy could cash checks made to Delaware corporation V7 Inc. McCoy contends that she believed Scott registered the websites under the Washington State V7 Inc., and used Tanaka's name and address to avoid United States taxes.

Plaintiff's evidence from the whois.sc website reveals that initially the registrant was V7 Inc., with a Japanese address that matches Tanaka's address.

Initially, Tanaka is listed as the administrative contact.  (V7N.com on September 5, 2005; Bluefind.com on August 29, 2005; Sevenseek.com on September 2, 2005). Each website's registrant is then later listed with V7 Inc. with the Pennsylvania post office box of McCoy.  (V7n.com on September 8, 2005; bluefind.com on September 9, 2005; sevenseek.com on September 10, 2005).  Those later listings also list McCoy as the administrative contact for the website.  At an even later date, the whois.sc information indicates that the domain servers for the websites were changed to NS1.Remly.com and NS2.Remly.com, servers that are based in Lock Haven, Pennsylvania, where defendant McCoy resides.

Defendant contends that Scott authorized her to change the website information when he believed he was going to be detained in Japan.  McCoy later testified that once Scott was released by Japanese authorities he told McCoy that he was going to run the websites without McCoy.  Scott was instead going to run the websites with Tanaka.  Scott denies that he authorized McCoy to change the websites' registrant and administrative contact information.  Scott also asserts that McCoy was always just an employee and never had any ownership interest in the websites or the websites' content.

### III.  PLAINTIFF HAS FAILED TO DEMONSTRATE AN IRREPARABLE HARM

The central factor a court must consider when evaluating a plaintiff's request for preliminary injunctive relief is whether the plaintiff would suffer irreparable harm if the court did not grant the request for injunctive relief.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and inadequacy of legal remedies.")  If a plaintiff cannot show irreparable harm then a court may not issue a preliminary injunction.  Instant Air Freight Co., 882 F.2d at 800.  "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial."  Id. at 801.  Costs incurred by a plaintiff that are compensable by money damages do not constitute irreparable harm as a matter of law.  KOS Pharmaceuticals, Inc., 369 F.3d at 728; see also Sampson v. Murray, 415 U.S. 61, 90 (1974); Instant Air Freight Co., 882 F.2d at 801.

Plaintiff asserts that with defendant in control of the websites, "McCoy has the ability to destroy the content of the Websites and any other website hosted by the Websites."  (Rec. Doc. No. 17, at 8.)  Plaintiff maintains that if this were to happen then Tanaka's business and reputation would be ruined, and she would lose the trust of her customers and her customer base.

First, we find it unlikely that defendant would destroy the websites; McCoy's

testimony indicated that she had done everything possible to continue the

operations of the website.  Next, we note that even if McCoy were to destroy the

websites, we believe a value for each website could be calculated, and that money

damages would suffice.  If plaintiff is ultimately successful with her case, an

electronic record of any lost revenue would be available through the internet

payment companies.

Finally, plaintiff's contention that customers rely on website owners that they

have never met, diminishes her argument that Tanaka's reputation would be

harmed.  In fact, the testimony offered at the hearing indicated that the websites

operated without Tanaka's day to day effort, and with her being virtually

anonymous to the websites' users and customers.  McCoy's testimony suggested

that in recent months McCoy was the only person regularly interacting with the

websites' customers and the forums' posters, and that even in earlier months, the

other regular face of the website was Scott, and not Tanaka.  Again, we note that

on the V7n website under the "About" tab it discusses John Scott and Scott Media

Inc. based in Seattle, Washington.  Therefore, we are convinced that Tanaka will

not suffer irreparable harm.  Any harms that she may suffer without a preliminary

injunction can be remedied by money damages, and thus, we may not grant a

preliminary injunction.  We will, however, briefly address the other three factors we

considered.

## IV.  LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has alleged that McCoy has violated Title II of the Electronic

Communications Privacy Act of 1986, 18 U.S.C. § 2701, et seq., and has brought

a civil action authorized under 18 U.S.C. § 2707.  That law states that it is an:

> **Offense.**--Except as provided in subsection (c) of this
> section whoever--
>
> **(1)** intentionally accesses without authorization a facility
> through which an electronic communication service is
> provided; or
> **(2)** intentionally exceeds an authorization to access that
> facility;
>
> and thereby obtains, alters, or prevents authorized access
> to a wire or electronic communication while it is in
> electronic storage in such system shall be punished as
> provided in subsection (b) of this section.

18 U.S.C. § 2701(a).

Plaintiff contends that McCoy, without permission, unlawfully changed the

websites' owner registrations into her own name, and that she did so by unlawfully

obtaining the administrative passwords for the websites.  After McCoy obtained the

administrative passwords she blocked plaintiff's access to the websites and

directed customer payments into a different PayPal account.

9

Plaintiff's evidence from the whois.sc website indicates that the name of the registrant has remained the same, but the administrative contact information and addresses have changed.  McCoy contends that she was authorized to access the passwords by Scott, and that Scott and McCoy had always been managing the websites.  McCoy also indicated that she was never aware that Kae Tanaka was a real person, and that she believed Scott had used her information in order to avoid taxation in the United States when running their business.

The court is not convinced from the evidence and testimony presented at the hearings as to the identity of the rightful owner of the websites and the intellectual property contained on the sites.  Therefore, there is insufficient evidence for us to find that there is a substantial likelihood of success as to any of plaintiff's claims.  The court does not have evidence of payments received or made by Tanaka that demonstrate that she owned the website and earned money from the sites.  Without further discovery we will not predict the merits of plaintiff's case.

## V.  HARM TO NONMOVING PARTY

Plaintiff contends that McCoy has no legal or equitable interest in the websites and their related revenues, and that, therefore, she can suffer no harm from the granting of a preliminary injunction.  McCoy asserts that before Scott entered Japan he directed McCoy to transfer the websites out of his name, and at

10

that time she took formal control of the websites.  McCoy also asserts that if she were to turn over the passwords to the websites she would be without any legal remedy, and will have lost all the fruits of her efforts invested into the websites over the past two years.

The court finds that both McCoy and Scott's testimony created serious credibility issues.[3]  The record does not contain clear evidence of who paid for the registration of the websites and who currently owns the websites.  Although we do not see any serious harm to the nonmoving party if we were to grant the injunction, we will not do so, because as we have already noted, we are not persuaded that McCoy will cause an irreparable harm to Tanaka.

## VI.  PUBLIC INTEREST

Plaintiff contends that the public interest will be served by granting the preliminary injunction, in part because an injunction will "protect the owners of the websites hosted by Tanaka from having their property permanently destroyed by McCoy."  (Rec. Doc. No. 17, at 9.)  We cannot agree.  Plaintiff has offered no

---

[3]At our initial TRO hearing Scott stated that he was on "vacation" when McCoy changed the websites' registration information, but at the preliminary injunction hearing he testified that he was detained in jail for twenty days for illegally entering Japan.

On the other hand, McCoy redirected funds to a friend's account  in order to avoid our TRO order that froze her PayPal account.

11

evidence that Tanaka still hosts websites for third parties.  Plaintiff has not

identified any third parties whose interests would be concerned.  And at the

preliminary injunction hearing, McCoy indicated that the only websites at issue were

bluefind.com, V7n.com, and sevenseek.com.  Furthermore, we find plaintiff's

argument that a preliminary injunction will prevent further criminal action and block

McCoy's illegal behavior to be conclusory.  There is nothing preventing authorities

from criminally prosecuting McCoy.  Therefore, the court finds that the public

interest does not weigh in favor or against granting a preliminary injunction.

## CONCLUSION:

For all of the above reasons, plaintiff's motion for a preliminary injunction

will be denied, and the court's temporary restraining order dated September 29,

2005will be dissolved.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The court's temporary restraining order dated September 29, 2005,
      previously dissolved from the bench, is now formally dissolved.
      (Rec. Doc. No. 9.)

2.    Plaintiff's motion for a preliminary injunction is denied.  (Rec. Doc.
      No. 2.)

3.    The Clerk is directed to release to plaintiff the $5,000.00 bond
      received by the court in connection with the previously issued

temporary restraining order.

   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge